1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

EDUARDO GONZALEZ-
PACHECO,

        Defendant.

NO. CR-04-2104-RHW

**ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS**

15  Before the Court is Defendant's Motion to Dismiss (Ct. Rec. 38).   A hearing

16  was held on this matter on April 19, 2005, in Yakima, Washington.  Defendant was

17  present and represented by Rebecca Pennell; the Government was represented by

18  Robert Ellis.

19                              **BACKGROUND FACTS**

20  In January, 2001, Defendant was charged with illegal reentry, in violation of

21  8 U.S.C. § 1326, with a prior deportation date of March 17, 1998 (CR-01-2003-

22  RHW).  Defendant pleaded guilty and was sentenced to 30 months.  Defendant was

23  deported on July 8, 2003.  According to the record, Defendant's 2003 deportation

24  hearing was accomplished by an administrative order that reinstated his March 17,

25  1998 order of deportation.

26  On August 17, 2004, the Government filed an indictment alleging that

27  Defendant violated 8 U.S.C. § 1326 by being found in the United States after being

28  deported.  The date of the deportation alleged was July 8, 2003.  On October 28,

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1**

2004, Defendant entered a guilty plea (Ct. Rec. 14).  On March 10, 2005, the Court granted Defendant's motion to withdraw plea of guilty  (Ct. Rec. 32).  On March 15, 2005, the Government filed a superseding indictment alleging that Defendant violated 8 U.S.C. § 1326, with the date of deportation being March 17, 1998.

On March 25, 2005, Defendant filed a Motion to Dismiss, asserting that his Fifth Amendment right against double jeopardy would be violated if the Government relied on the March 17, 1998 date of deportation.

### ANALYSIS

In order to obtain a conviction under 8 U.S.C. § 1326 in this case, the Government must prove that Defendant left the United States after his release from custody from his 2001 conviction for illegal reentry.  *United States v. Meza-Villarello*, 602 F.2d 209, 211 (9th Cir. 1979).  At the hearing, the Government conceded that the only evidence of Defendant's return to Mexico following his 2001 conviction is the 2003 warrant of deportation.  Generally, a warrant of deportation provides sufficient evidence of physical removal.[1]  *United States v. Bahena-Cardenas,* 2005 WL 1384353 (June 13, 2005 9th Cir.).

In this case, the warrant of deportation was a result of an illegal administrative proceedings.  *See Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299, 1303 (9th Cir. 2004) (holding that INS's procedures that permit reinstatement without the right to a hearing before an immigration judge was *ultra vires*).  The evidence that the Government intends to rely upon, however, is not the actual warrant, but the statement of the officer who witnessed Defendant crossing the

---

[1]In *Bahena-Cardenas*, the circuit held that the warrant of deportation was not inadmissible hearsay.  2005 WL 1384353 *5 ("[T]he warrant of the warrant of deportation is no different than a birth certificate or any other public record which constitutes the routine cataloguing of an unambiguous factual matter. . . We hold that the warrant of deportation in this case is nontestimonial and thus admissible.")

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 2

border into Mexico, which is contained within the warrant of deportation.[2]

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987).[3] Rather than collaterally attack his removal order, however, Defendant is arguing that the Government cannot rely on the July 8, 2003 warrant of deportation as evidence that Defendant left the United States after his release from custody from his 2001 conviction for illegal reentry.[4]

---

[2]The actual statement in the warrant of deportation is the signature and title of the INS official next to the following statement: "Departure witnessed by:" (Ct. Rec. 39-2, p. 13).

[3]To sustain a collateral attack under § 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). An underlying removal order is "fundamentally unfair" if: "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

[4]Defendant relies on *Mendoza-Lopez* to argue that he has a right to collaterally attack his 2003 deportation hearing. That may be true, but here, Defendant is not collaterally attacking his 2003 deportation hearing. Instead, Defendant seeks to prevent the Government from using the testimony of an officer that he witnessed Defendant leaving the United States prior to illegally entering it. Even if Defendant was collaterally attacking his 2003 deportation hearing,

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3**

1  In doing so, Defendant is asking the Court to suppress the evidence contained in
2  the warrant of deportation.

3       It is clear that Defendant's 2003 deportation proceeding was the result of
4  *ultra vires* conduct on the part of the Government; therefore, the Court must
5  determine whether the exclusionary rule would apply to the ensuing warrant of
6  deportation.  The Government argues that exclusion is inappropriate to remedy the
7  defective deportation proceedings.  The Court agrees.

8       The exclusionary rule mandates suppression of evidence garnered in
9  contravention of a defendant's constitutional rights and protections.  *See Mapp v.*
10 *Ohio*, 367 U.S. 643 (1961).  Thus, the rule is intended to: deter improper conduct
11 by law enforcement officials, *United States v. Leon*, 468 U.S. 897 (1984); preserve
12 judicial integrity by insulating the courts from tainted evidence, *United States v.*
13 *Payner*, 447 U.S. 727 (1980); and maintain popular trust in the integrity of the
14 judicial process, *United States v. Calandra*, 414 U.S. 338, 357 (1974) (Brennan, J.,
15 dissenting).  These goals of the exclusionary rule also apply to situations outside
16 constitutional violations.  *See McNabb v. United States*, 318 U.S. 332 (1943) ("The
17 principles governing the admissibility of evidence in federal criminal trials have
18 not been restricted . . . to those derived solely from the Constitution.").

19      The exclusionary rule "has never been interpreted to proscribe the use of
20 illegally seized evidence in all proceedings or against all persons."  *United States v.*
21 *Lopz-Martinez*, 725 F.2d 471, 476 (1984) (*quoting United States v. Calandra*, 414
22 U.S. 338, 348 (1974)).  "If application of the rule in a particular situation 'does not
23 result in appreciable deterrence, then, clearly, its use . . . is unwarranted.'"  *Id.*

24      In this case, the warrant of deportation was executed in July, 2003.  Two

25 _____
26 Defendant could not show the necessary prejudice, due to his status as an
27 aggravated felon.  According to Defendant's 2001 Presentence Report, Defendant
28 was previously convicted of possession of a controlled substance with intent to
deliver, which is an aggravated felony.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4**

year later, the Government intends to use the statements in the warrant as evidence that Defendant left the country.  Suppressing evidence of the statements in the warrant of deportation would not result in appreciable deterrence at this point. Moreover, even if Defendant were to be afforded a hearing that would be presided over by an Immigration Judge, Defendant would have been deported regardless, due to his status as an aggravated felon.[5]

Because the Court concludes that the Government is not prohibited from relying on the 2003 warrant of deportation as evidence that Defendant left the United States prior to illegally reentering it, Defendant's double jeopardy arguments are without merit.

Accordingly, **IT IS HEREBY ORDERED:**

1 .    Defendant's Motion to Dismiss (Ct. Rec. 38) is **DENIED**.

//

//

//

//

//

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this

---

[5]The Court also notes that on August 24, 2001, Defendant filed a Stipulation to Deportation (CR-01-2003-RHW [Ct. Rec. 24]).  In that stipulation, Defendant "agree[d] and stipulate[d] to an Order of Reinstatement of the Order of Removal." He stated that "I further agree to waive any and all rights I might have to protest such order and seek asylum 'based upon possible persecution and torture.' Further, I hereby waive any and all rights I might have to appeal and/or to reopen or challenge in any way the Order of Reinstatement of the prior Order of Removal. The Government filed a Motion for Downward Departure based on Defendant's stipulation (CR-01-2003-RHW [Ct. Rec. 18]).  It appears that this stipulation would preclude Defendant from collaterally attacking the 2003 deportation.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5**

order and to provide copies to counsel.

**DATED** the 27th day of June, 2005.

s/ ROBERT H. WHALEY
United States District Judge

Q:\CRIMINAL\2004\Gonzalez-Pacheco\deny.ord.wpd

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6**